UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GROVELAND MUNICIPAL LIGHT DEPARTMENT, <br>     Plaintiff, <br><br> v. <br><br> PHILADELPHIA INDEMNITY INSURANCE COMPANY, <br>     Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) C.A. No. 18-12003-MLW <br> ) <br> ) <br> ) <br> ) <br> ) |

<u>MEMORANDUM AND ORDER</u>

WOLF, D.J.                                                        October 26, 2020

    Plaintiff Groveland Municipal Light Department ("GELD") alleges that defendant Philadelphia Indemnity Insurance Company ("PIIC") wrongfully refused GELD's claim for payment under bonds issued by PIIC in connection with a municipal construction contract. GELD seeks a declaratory judgment that it is a proper claimant under the bonds, and has a valid and enforceable claim against PIIC (Count 1). GELD also seeks damages for breach of contract (Count 2), breach of the implied covenant of good faith and fair dealing (Count 3), violation of M.G.L. c.93A, §11 (Count 4), and violation of M.G.L. c.176D, §3 (Count 5). The parties have filed cross motions for summary judgment.

    For the reasons explained below, the court is granting PIIC's motion for summary judgment.

1

I.  BACKGROUND

The following facts are not disputed. Plaintiff Groveland Municipal Light Department is the sole supplier of electricity to the town of Groveland, Massachusetts. Complaint (Docket No. 4) at ¶¶1, 3. Defendant Philadelphia Indemnity Insurance Company is a Pennsylvania Corporation with its principal place of business in Pennsylvania. Notice of Removal at ¶6.

On March 30, 2016, GELD issued an invitation for bids in accordance with M.G.L. c. 149, §44A et seq. for a public building project (the "Project"). Following the bidding process, GELD selected general contractor GTC Construction Management ("GTC") as the lowest eligible bidder. Compl. at ¶8; PIIC Statement of Facts ("PIIC SOF") (Docket No. 13) at ¶2. GTC agreed to complete the Project for $1,202,210, later raised to $1,235,764 as a result of approved change orders, in a general construction contract entered into with GELD on May 12, 2016 (the "Contract"). Complaint at ¶¶9-10; PIIC SOF at ¶5.

GTC provided GELD with a Performance Bond and Payment Bond issued by PIIC, each in the amount of $1,202,210. Compl. at ¶10; PIIC SOF at ¶4. The Payment Bond was provided as security for all persons working or providing materials in connection with the Project, while the Performance Bond was provided as security for the faithful performance of the Contract by GTC. See Complaint at ¶¶11-12.

GTC submitted applications for payment in the total amount of $1,010,134.63 to GELD over the course of the Project. Complaint at ¶14; PIIC SOF at ¶6. GTC certified that all amounts due to subcontractors had been paid in each application for payment. GELD Statement of Facts ("GELD SOF") (Docket No. 14-1) ¶10. However, it appears GTC did not actually pay some of them. Complaint at ¶¶15-16. GELD later received demands for payment directly from subcontractors that had not been paid by GTC in the total amount of $306,967.90, and paid them. Id. at ¶17; PIIC SOF at ¶10. GELD believed that satisfaction of these demands was required by M.G.L. c.30, §39F, which allows subcontractors that have not been paid by a general contractor to demand payment from the awarding authority directly. See PIIC SOF, Ex. 7; GELD SOF at ¶2. In combination with the $1,010,134.63 already paid to GTC, GELD paid a total of $1,317,102.83, $81,338.83 more than the Contract amount, including approved change orders, of $1,235,764.00. Complaint at ¶18.

GELD made a demand for payment by defendant of the extra $81,338.83 under the Payment Bond to PIIC on May 9, 2017.[1] See PIIC SOF at ¶10, Ex. 4. It told PIIC that it was not requesting payment under the Performance Bond. See Docket No. 13-12. PIIC denied the claim on the grounds the GELD was not a proper claimant under the

---

[1] GELD originally demanded only $66,517.83. Its demand was increased to $81,338.83 after it received a revised demand from one of the subcontractors. See Docket No. 13, Ex. 9 (Demand Letter) at 6 of 12.

3

Payment Bond and had acted as a volunteer in satisfying the subcontractors' demands in excess of the contract amount. See PIIC SOF at ¶18, Ex. 8. GELD then made a demand for payment to PIIC pursuant to M.G.L. c.93 on November 3, 2017, which PIIC also denied. See PIIC SOF at ¶¶19-23, Exs. 9-10. This litigation followed.

II. PROCEDURAL HISTORY

GELD brought this action in Massachusetts Superior Court on August 2, 2018. See Docket No. 4. PIIC was served with the complaint on September 17, 2018, and filed a Notice of Removal on September 24, 2018. See Notice of Removal (Docket No. 1) at ¶2.

GELD did not contest removal. In any event, removal was permissible. PIIC timely filed a Notice of Removal and the requirements of diversity jurisdiction are met. There is complete diversity between the parties, and the Complaint seeks damages of at least $81,338.83, in excess of the statutory required minimum of $75,000. See 28 U.S.C. §1332(a); Complaint at ¶19.

Both parties have since filed motions for summary judgment on all counts.

III. LEGAL STANDARDS

   a. The Summary Judgment Standard

Federal Rule of Civil Procedure 56(a) provides that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled

4

to judgment as a matter of law." A factual dispute, therefore, precludes summary judgment if it is "material" and "genuine." See Anderson v. Liberty Lobby, 477 U.S. 242, 247-48 (1986).

A fact is "material" if, in light of the relevant substantive law, "it has the potential of determining the outcome of the litigation." Maymi v. Puerto Rico Ports Auth., 515 F.3d 20, 25 (1st Cir. 2008); Martinez-Rodriguez v. Guevara, 597 F.3d 414, 419 (1st Cir. 2010). "Only disputes over facts that might affect the outcome of the suit under the governing law properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248.

"Cross motions for summary judgment neither alter the basic Rule 56 standard, nor warrant the grant of summary judgment per se." Wightman v. Springfield Terminal Ry. Co., 100 F.3d 228, 230 (1st Cir. 1996) (internal citations omitted). "Cross motions simply require [the court] to determine whether either of the parties deserves judgment as a matter of law on facts that are not disputed." Id.

IV. DISCUSSION

GELD alleges that PIIC's denial of its claims under the "Bonds" constitutes a breach of contract (Count 2) and of the implied covenant of good faith and fair dealing (Count 3), and a violation of M. G. L. c.93A, §11 (Count 4) and M. G. L. c.176D, §3 (Count 5). GELD also seeks a declaratory judgment that it is a proper claimant and has a valid claim under the "Bonds" (Count 1).

Although the Complaint indicates that these claims arise under the "Bonds" generally, the parties' briefing almost exclusively addresses the Payment Bond. This is understandable because GELD told PIIC that it was not seeking payment under the Performance Bond and, therefore, may not recover under it in this case. See Docket No. 13-12. Moreover, the court need not consider any argument raised in only a perfunctory manner. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."); Brown v. Trustees of Boston Univ., 891 F.2d 337, 353 (1st Cir.1989)(accord). Therefore, to the extent, if any, that GELD is seeking relief based on the Performance Bond its claims are waived as well as unmeritorious.

a. Payment Bond

The Payment Bond binds PIIC and GTC to GELD "in the penal sum [of $1,202,210]" obligated to GELD as security in the event that GTC defaults on its obligation to pay "all persons, firms, subcontractors, and corporations furnishing materials for or performing labor" on the Project. See Payment Bond (Docket No. 13-2) at H-1; Contract (Docket No. 14-3) §7.5.1.

PIIC contends that it properly denied GELD's request for reimbursement under the Payment Bond because GELD is not an authorized claimant under the it. According to PIIC, the terms of the Payment Bond, the Contract, and M.G.L. c.149, §29 provide that

6

only subcontractors or suppliers of materials may assert a claim under the Payment Bond. See PIIC Mot. Summary Judg. (Docket No. 12) at 7-10. As GELD is an owner and obligee under the contract, rather than a subcontractor or materialman, PIIC argues it is not a proper claimant.

The court agrees that GELD is not a proper claimant under the Payment Bond. Therefore, it is granting PIIC's motion for summary judgment as to all claims arising from PIIC's obligations under it.

Neither the Contract nor the Payment Bond expressly addresses who is a proper claimant under it. Nevertheless, the court finds that the Payment Bond, when read in conjunction with the Contract and statutory payment bond scheme, M.G.L. c. 149, §29, limits claimants to subcontractors and materialmen.

The Contract requires that Contractor, GTC, furnish a Payment Bond "as a security for the payment of all persons performing labor on the project under this Contract or furnishing materials in connection with this contract." Contract (Docket No. 14-3) §7.5.1. It references a form payment bond, which was used by the parties in this case. The Payment Bond similarly provides that PIIC's suretyship obligation will continue until the principal, GTC, "shall promptly make payment to all persons, firms, subcontractors, and corporations furnishing materials for or

7

performing labor in the prosecution of the work provided for in such contract . . . ." Payment Bond (Docket No. 13-2) at H-1.

The statutory payment bond scheme clarifies who may assert a claim under the Payment Bond. The instant Payment Bond was issued pursuant to M.G.L. c. 149, §§29 and 44E(2), which require that a general contractor selected for a public construction contract with a value in excess of $25,000 furnish payment and performance bonds to the awarding authority. See M.G.L. c. 149, §§29, 44E(2). "A statutory payment bond is a contract, although its terms and conditions are largely defined by statute, in this case, [M.G.L. c. 149,] §29." N-Tek Const. Servs., Inc. v. Hartford Fire Ins. Co., 89 Mass. App. Ct. 186, 191 (2016). The Contract acknowledges that "other rights, duties, and obligations with respect to public construction contracts are provided for by statute, notwithstanding the fact that they are not provided from in the Contract Documents." Contract (Docket No. 14-3) at §K.

Although the term "claimant" is not defined, analysis of M.G.L. c.149, §29 indicates that the only claimants contemplated by the statute are subcontractors and materialmen. Specifically, in providing a time limitation on claims under payment bonds, the statute provides that:

> "any claimant having a contractual relationship with the contractor principal furnishing the bond [here, GTC] who has not been paid in full for any amount claimed due for the labor, materials, equipment,

8

> appliances or transportation . . . shall have the right to enforce any such claim [] by filing a petition in equity within one year after the day on which such claimant <u>last performed the labor or furnished the labor, materials, equipment, appliances or transportation</u> included in the claim . . . ."

M.G.L. c. 149, §29 (emphasis added). The only claimants under the statute are, therefore, those that have "performed [] labor" or "furnished . . . materials, equipment, appliances, or transportation" for a general contractor or subcontractor contracted by the general contractor. In other words, M.G.L. c. 149, §29 only permits actions on "such [payment] bonds by subcontractors and materialmen." <u>Floors, Inc. v. B. G. Danis of New England, Inc.</u>, 380 Mass. 91, 93 (1980). Accordingly, the Massachusetts Court of Appeals has interpreted §29 to limit "eligible claimants" under a statutory payment bond to the two classes of claimants contemplated in this section. See <u>N-Tek</u>, 89 Mass. App. Ct. at 191; <u>see also</u> 57 Mass. Prac., Mass. Construction Law §9:28 ("In order to recover amounts due for labor and materials furnished to a public construction project secured by a payment bond issued pursuant to M.G.L. c. 149, §29, the claiming party must be a qualified claimant under the statute.").

Courts have generally agreed that an owner or obligee is not a proper claimant under a payment bond. See <u>also</u> <u>Am. Mfrs. Mut. Ins. Co. v. Sherborn Meadows, LLC</u>, No. 07-11711-DPW, 2008 WL 5396479, at *5 (D. Mass. Dec. 22, 2008) (noting that the case law

9

"does not favor an owner/obligee who seeks payment directly on a payment bond"); Travelers Cas. & Sur. Co. v. Dormitory Auth.-State of New York, 735 F. Supp. 2d 42, 87 (S.D.N.Y. 2010) ("[T]he owner-obligee may generally not recover damages from the surety under the payment bond, as the bond is intended to provide payment to persons supplying labor and material to the contractor, not to provide a financial recovery to the owner-obligee."); Ayers Enters., Ltd. v. Exterior Designing, Inc.,* 829 F.Supp. 1330, 1333 (N.D. Ga. 1993) ("[P]ayment bonds are intended to protect laborers and materialmen rather than the obligee of the bond.").

Therefore, the court concludes that as an owner and obligee under the Contract, GELD is not an eligible claimant under the Payment Bond pursuant to §29.

Moreover, this case does not present a situation where GELD may assert a claim under the Payment Bond on an equitable subrogation theory. Courts have recognized a limited exception to the general rule that an owner may not assert a claim under a payment bond where an owner has been effectively compelled to pay directly a subcontractor who could have brought a claim under the payment bond. See Couch on Insurance §165:14 ("While an obligee has a right of action on . . . harm sustained by him through a breach of the contract, the obligee has no right thereon with respect to the claims of laborers and materialmen, unless, through payment, he has become subrogated to their claims."); Travelers

10

Cas. & Sur. Co., 735 F. Supp. 2d at 88. The exception is limited to "cases where a party is compelled to pay the debt of a third person to protect his own rights, or to save his own property." Broadway Houston Mack Dev., LLC v. Kohl, 71 A.D.3d 937, 937 (N.Y. App. Div. 2010) (quotations omitted) (owner could not assert claim under payment bond under subrogation theory where owner "failed to demonstrate that those payments [to subcontractors] were necessary to protect its legal or economic interests"). Similarly, the Massachusetts Supreme Judicial Court has held that equitable subrogation does not apply unless a purported subrogee, among other things, "made the payment to protect his or her own interest [and] did not act as a volunteer." E. Bos. Sav. Bank v. Ogan, 428 Mass. 327, 330 (1998).

Here, GELD has not provided evidence sufficient for a reasonable fact-finder to conclude that it did not act as a volunteer in making payments to subcontractors in excess of the contract amount. GELD contends that it was compelled by M.G.L. c.30, §39F(1)(d), the "direct demand" statute, to satisfy the subcontractors' demands for payment including those in excess of the total contract amount. M.G.L. c.30, §39F(1)(d) provides that subcontractors for public construction projects may make demands for direct payment on an owner, like GELD, if they are not paid by the general contractor within 70 days after the subcontractor completes their work. See M.G.L. c.30, §39F(1)(d). If the general

contractor does not dispute these claims in a sworn reply within ten days,[2] the owner must pay these demands within fifteen days, less any amounts retained by the owner to complete unsatisfactory or incomplete work or barred by court order. See M.G.L. c.30, §39F(1)(d), (e). However, M.G.L. c.30, §39F(1)(g) provides a limitation on the owner's obligation to pay such demands:

> "All direct payments . . . <u>shall be made out of amounts payable to the general contractor at the time of receipt of a demand for direct payment</u> from a subcontractor and out of amounts which later become payable to the general contractor . . . ." (emphasis added)

The provisions of §39F are also included in the Contract, as required by law. See Contract (Docket No. 14-3) §K at ¶1.8.7.

As indicated by the express language of M.G.L. c.30, §39, GELD was not required to make direct payments to subcontractors that were in excess of the amount of its contract with GTC. Rather, "[t]he statute [] limits the pool of funds from which direct payments must be made to such funds that are then currently 'payable' to the general contractor." Gen. Mech. Contractors, Inc. v. Peabody Const. Co., 2006 WL 2661235, at *4 (Mass. Super. Sept. 1, 2006). As explained earlier, when GELD received the demands for

---

[2] Although GTC indicated in several letters that it believed the subcontractors' demands for direct payment should be denied as GTC disputed the amounts claimed (see Docket No. 13-7), PIIC does not appear to contend that these letters constituted a formal dispute under c. 30, §39F(d) which would excuse GELD from the statutory obligation to pay these demands within fifteen days. See Docket No. 14-4 at 14.

12

direct payment in the amount of $306,967.90, only $225,629.37 - the amount of the total contract sum including approved overages that had not yet been paid to GTC - remained "payable to [GTC]." See M.G.L. c.30, §39F. The additional $81,338.83 paid by GELD was not then "payable to" GTC, and GELD does not allege, let alone provided evidence, that this amount later became payable to GTC.

GELD argues that a municipal light plant, unlike a town, is not subject to §39F(g)'s requirement that direct payments be made out of amounts payable to the general contractor because it is not subject to the budgeting and appropriations processes. See GELD Mot. Summary Judg. (Docket No. 15) at 15. However, the statute makes no such distinction. Moreover, the Contract states that the rights, duties, and obligations with respect to public contracts apply to it. See Contract (Docket No. 14-3) §7.6.1. M.G.L. c.149, §29 defines and limits those rights with regard to the Payment Bond. GELD provides no authority supporting this distinction and, in any event, the court finds its argument is unpersuasive

Accordingly, there are no genuine disputes of material fact and PIIC is entitled to judgment as a matter of law that it is not liable to GELD under the Payment Bond. The court is, therefore, granting PIIC's motion for summary judgment on all counts with regard to claims arising from PIIC's denial of GELD's claim for reimbursement under the Payment Bond.

b. <u>Performance Bond</u>

The Performance Bond functions as security against the failure by GTC to complete the Contract according to its terms. It states that PIIC is to hold $1,202,210 obligated to GELD until the Principal, GTC:

> shall well, truly, and faithfully perform its duties, all the undertakings, covenants, terms, conditions and agreements of [the Contract] . . . and if he shall satisfy all claims and demands incurred under such contract, and shall fully indemnify and save harmless the Owner from all costs and damages which it may suffer by reason of its failure to do so, and shall reimburse and repay the Owner all outlay and expense which the Owner may incur in making good any default . . . .

Performance Bond at G-1 (Docket No. 13-2).

Unlike the Payment Bond, PIIC concedes that GELD could be a proper claimant under the Performance Bond. <u>See</u> PIIC Mot. Summary Judg. at 9. However, PIIC asserts that GELD never made a claim under the Performance Bond and that it would have denied any such claim because GELD was not obligated to pay the subcontractors amounts in excess of the total contract amount.

As indicated earlier, before fling suit GELD represented that it was not making a demand to PIIC for payment under the Performance Bond. Although counsel for GELD had referred to the Performance Bond in a demand letter to PIIC, <u>see</u>, Docket No. 13-10, he later clarified that he "mistakenly quoted from the Performance Bond" and that "Groveland's claim will be made under the Payment Bond." Docket No. 13-12. PIIC acknowledged and relied

14

on this "clarification that Groveland's claim against [PIIC] is against the Payment Bond issued by [PIIC] as opposed to its Performance Bond." See Docket No. 13-13. As GELD informed PIIC that it was not making a claim under the Performance Bond, PIIC cannot be held liable for not paying such a possible claim.

In addition, the issue of whether or not PIIC is, or could be, liable to GELD under the Performance Bond is addressed only in a cursory fashion in GELD's briefing. More specifically, beyond noting that the Performance Bond "contains similar language to that contained in the Payment Bond," see GELD Mot. Summary Judg. at 10, GELD does not make any argument regarding how PIIC breached its obligations to GELD under the Performance Bond and how PIIC could be liable to GELD under it. Therefore, the court deems any claim based on the Performance Bond to have been waived, in addition to being unmeritorious.

V.   ORDER

In view of the foregoing, it is hereby ORDERED that:

1. PIIC's Motion for Summary Judgment (Docket No. 11) is ALLOWED.

2. GELD's Motion for Summary Judgment (Docket No. 14) is DENIED.

3. Judgment shall enter for defendant.

_____
UNITED STATES DISTRICT JUDGE